IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


VICTOR ANDREW APODACA, SR.,

        Plaintiff,

v.                                        No. CIV 15-61 JP/LF


GERMAN FRANCO, MICHELLE BOYER,
and VINCENT VIGIL,

        Defendants.


## MEMORANDUM OPINION AND ORDER

This is a *pro se, in forma pauperis* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Victor Andrew Apodaca, Sr. (Mr. Apodaca).[1] Mr. Apodaca is currently an inmate at the Northeast New Mexico Detention Facility in Clayton, New Mexico. When he initiated this lawsuit, Mr. Apodaca was an inmate at the Penitentiary of New Mexico (PNM) in Santa Fe, New Mexico. Complaint (Doc. No. 1).

Mr. Apodaca attempts to allege various constitutional claims against Defendants German Franco (Mr. Franco), who was the warden of PNM, Michelle Boyer (Ms. Boyer), who was a grievance officer at PNM, and/or Vincent Vigil (Mr. Vigil), who was a unit manager at PNM (collectively, Defendants) that purportedly occurred in about 2014.

### Procedural Background

On January 21, 2015, Mr. Apodaca filed a federal civil rights Complaint against these three Defendants, as well as two other Defendants, who were subsequently dismissed. *See*

---

[1] On September 18, 2017, this case was reassigned to the undersigned Senior United States District Judge. On November 9, 2017, the undersigned Senior United States District Judge withdrew the Order referring this proceeding to United States Magistrate Judge Laura Fashing.

MEMORANDUM OPINION AND ORDER (Doc. No. 9) (dismissing Defendant Gregg Marcantel) and MEMORANDUM OPINION AND ORDER (Doc. No. 81) (dismissing Defendant Tisha Romero). Defendants filed Answers to Mr. Apodaca's Complaint. Doc. Nos. 14, 42.

On November 17, 2015, the Court ordered Defendants to file a *Martinez* report concerning Mr. Apodaca's claims against Mr. Franco, Ms. Boyer, and Mr. Vigil. Order (Doc. No. 44). On February 18, 2016, Defendants filed their *Martinez* report, observing that Mr. Apodaca's claims often were unclear. Defendants noted certain themes in the Complaint, e.g., allegations about denial of medical treatment, lost mail, lost property, failure to handle grievances, retaliation, a blocked telephone PIN, and a lack of a kosher diet and a Torah. *Martinez* Report at 3. Defendants produced copies of relevant records, policies, and regulations, along with affidavits. *See id.* at 4–5.

In their *Martinez* report, Defendants moved for summary judgment and/or dismissal of the Complaint for failure to state a claim. Defendants raised a number of arguments in support of dismissal, including failure to exhaust administrative remedies, qualified immunity of Defendants, and *res judicata* and collateral estoppel. *See id.* at 1–3 (Table of Contents).

On March 31, 2016, Mr. Apodaca filed a response to the *Martinez* report that he identified as OPPOSITION TO THE DEFENDANTS MOTION TO DISMISS ANSWER TO DEFENDANTS DENIAL OF FACTUAL OR LEGAL BASIS ON MARTINEZ REPORT FOR MERITORIOUS CLAIM (Response) (Doc. No. 69). Mr. Apodaca's Response includes arguments about the importance of his claims against Defendants, along with exhibits.

On July 29, 2016, Mr. Apodaca filed PLAINTIFF'S REQUEST FOR THE ADMISSION OF DOCUMENTS (Document Request) (Doc. No. 83), including a copy of a decision by the

Ninth Circuit Court of Appeals, *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014). The Ninth

Circuit opinion has no bearing or precedential value in this proceeding. Mr. Apodaca also

attached a 64-page contract between the State of New Mexico and Corizon, Inc., along with a

Gulf War Newsletter. These documents are not relevant to the Court's analysis of Mr. Apodaca's

claims. Nor is Mr. Apodaca's copy of a "LCCF Inmate Request Form" pertinent to the Court's

discussion. The LCCF Inmate Request Form concerning Mr. Apodaca's legal mail at another

correctional facility in 2016 does not pertain to the claims against these Defendants. Thus, while

the Court examined these documents, *see* Order on Motions (Doc. No. 92) (granting Mr.

Apodaca's request that the attached documents be considered), the attached materials are not

relevant to the claims.[2]

On August 24, 2016, Mr. Apodaca filed PAINTIFF'S (sic) MOTION FOR PARTIAL

SUMMARY JUDGMENT (Doc. No. 87) and a supporting brief (Doc. No. 88) (Mr. Apodaca's

Summary Judgment Motion). In addition, he filed his own Declaration (Doc. No. 89) and a

separate Statement of Undisputed Facts with about 40 pages of exhibits (Doc. No. 90). The Court

has reviewed all of these filings in deciding Mr. Apodaca's claims. *See* Order on Motions (Doc.

No. 92).

On April 6, 2017, Mr. Apodaca wrote a three-page letter (Doc. No. 93), along with a

three-page Declaration and exhibits (Doc. No. 94), and on June 8, 2017, he wrote a two-page

---

[2] The same is true regarding documents provided in Mr. Apodaca's state-court proceeding and/or arguments and references made to the State Court Judge. In Mr. Apodaca's Response at 9, for example, he mentions letters he wrote to First Judicial District Court Judge Sarah M. Singleton. Mr. Apodaca also refers to "court documents" from the state court proceeding (Doc. No. 69–1 at 1). Mr. Apodaca attached six pages of handwritten notations (e.g., "4-4-14 State Tort Ex. B p05, "4-16-14 State Tort Ex. B p06," "5-9-15 (seen doctor phsy) original notes and journals") that may refer to exhibits in the state court proceeding. The Court does not have these exhibits, and Mr. Apodaca's notations are not evidence that support his claims in this proceeding.

letter (Doc. No. 95). The Court has considered all of these materials in evaluating Mr. Apodaca's claims and Defendants' request for summary judgment or dismissal of this proceeding.[3]

After a thorough review of the pertinent law, and all of the arguments and evidence presented by Mr. Apodaca and Defendants, the Court finds that Mr. Apodaca has failed to exhaust administrative remedies, failed to state a claim, and/or failed to raise a genuine dispute of material fact to defeat summary judgment. Therefore, the Court will dismiss all of Mr. Apodaca's claims against Defendants and will dismiss his Complaint in its entirety.

## Mr. Apodaca's Claims

As best as the Court can decipher Mr. Apodaca's Complaint and filings, he is pursuing the following claims against these three Defendants: 1) retaliation and violations of grievance procedures against Ms. Boyer;[4][5] 2) deprivation of property without due process in violation of the Fourteenth Amendment against Mr. Vigil and possibly against Mr. Franco;[6] and 3) failure to protect Mr. Apodaca's well-being in violation of the Eighth Amendment against Mr. Franco, Ms. Boyer, and Mr. Vigil.[7] The claims asserted against each of the three Defendants are difficult to

---

[3] On December 21, 2017, the Court received a letter from Mr. Apodaca in which he enclosed an "Extraordinary Writ of Mandamus Procedendo in Personam Jursidction," apparently asking this Court to compel a "Ninth Judicial District Court" state judge to produce "a copy of the writ of habeas corpus" in two state court habeas proceedings. Mr. Apodaca's letter with attachments will be filed in this proceeding. However, the requested state court habeas corpus pleadings are not pertinent to resolving Mr. Apodaca's civil rights claims in this proceeding, nor do they appear relevant to a separate civil rights proceeding filed by Mr. Apodaca in this federal court. *See Apodaca v. Corizon Health Care, et al.*, No. CIV 16-96 MV/LF.

[4] *See* Complaint at 8 (first paragraph), at 9 (last paragraph), at 2 (last paragraph), and at 15 (first few sentences).

[5] In the March 5, 2015 Memorandum Opinion and Order, the Court noted that allegations of violations of grievance procedures, without more, generally do not support a constitutional claim. March 5, 2015 Order at 2. However, the Court permitted the claim to proceed because of Mr. Apodaca's allegations that Defendants' violations of grievance procedures resulted, at least in part, from retaliation. *Id.* Thus, this claim survived the Court's *sua sponte* review of the Complaint under 28 U.S.C. § 1915(e)(2). But, at the summary judgment stage, Mr. Apodaca must come forward with more than bare allegations of retaliation by Defendants.

[6] *See* Complaint at 3 and 7 (Claim II), and 16 (Claim IV, last few lines).

[7] *See* Complaint at 8 (first paragraph); Mr. Apodaca's Declaration at 1 (Doc. No. 89) (alleging that Mr. Vigil placed Mr. Apodaca in a unit with enemies of Mr. Apodaca); Mr. Apodaca's letter (Doc. No. 93) (alleging that Mr. Franco started to retaliate against Mr. Apodaca which led to safety issues for Mr. Apodaca); Mr. Apodaca's Response at 9 (first few sentences) and 10 ("retaliation allegations" and first sentence). Although Mr. Apodaca sometimes refers to alleged retaliation, the allegations against these Defendants are so vague and non-specific that they fail to state a claim of retaliation.

understand because most of Mr. Apodaca's rambling complaints and allegations usually do not identify a specific defendant.

For purposes of clarity, the Court notes that Mr. Apodaca's claims regarding alleged denial of adequate medical treatment and alleged violations of the Americans with Disabilities Act (ADA) were asserted against Defendant Tisha Romero and not against Mr. Franco, Ms. Boyer, or Mr. Vigil.[8] *See* Memorandum Opinion and Order at 1–2 (Doc. No. 81) (discussing medical care claims against Ms. Romero). The Court already dismissed all of the claims against Ms. Romero alleging failure to provide adequate medical treatment and ADA violations. Doc. No. 81. Because there are no allegations that these three Defendants failed to provide appropriate medical care to Mr. Apodaca, the Court does not address medical care claims against Mr. Franco, Ms. Boyer, or Mr. Vigil.[9]

In addition, although Mr. Apodaca sets out allegations concerning religious programs, religious property, and religious diets, *see* Complaint at 17 (Claim V), he has not specifically alleged that any of these three Defendants violated his constitutional rights regarding his religious practices. Thus, the Court does not address any religious practices claims against these Defendants.

The Court also notes the allegation that "Security Officer Ben[a]videz" took or disposed of Mr. Apodaca's grievances without processing the grievances in accordance with prison procedures." Complaint at 3, 6. Mr. Apodaca has not named Officer Benavidez as a defendant in this lawsuit, and the Court does not address any claim against Mr. Benavidez.

---

[8] *See, e.g.,* Complaint at 2, 5, 6, 7 (Claim I and Claim II), at 4 (Claim III); Mr. Apodaca's Response at 2–4 (Doc. No. 69); and Mr. Apodaca's Summary Judgment Brief (Doc. No. 88),

[9] Mr. Apodaca's recitation of legal principles and citations of law in his Response at 4–5, concerning Eighth Amendment protections, do not include any specific allegations of inadequate medical care or violations of Eighth Amendment rights against Mr. Franco, Ms. Boyer, or Mr. Vigil.

## Legal Standards

Where the Court dismisses a complaint for failure to state a claim, the pertinent standard is Fed. R. Civ. P. 12(b)(6). Under that standard, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Where a Court dismisses a complaint because there are no genuine disputes of material fact and a party is entitled to judgment as a matter of law, the pertinent standard is Fed. R. Civ. P. 56. Fed. R. Civ. P. 56(a). "A party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record...." Fed. R. Civ. P. 56(c)(1)(A). The Court must view the record and all reasonable inferences in the light most favorable to the non-movant. *Pinney v. City of Tulsa Okla.*, No. 16-5171, 2017 WL 5643119, at *2 (10th Cir. Nov. 24, 2017) (citations omitted). Even so, "summary judgment still may be appropriate if the non-moving party cannot identify any specific evidence showing a genuine factual dispute on an essential element of his claim." *Id.* This means that to defeat summary judgment, Mr. Apodaca was obliged "to go beyond the pleadings and set forth specific facts that would be admissible in evidence ... from which a rational trier of fact could find" in his favor. *Mitchell v. Kansas City Kansas Sch. Dist.*, No. 17-3090, 2017 WL 5151688, at *1 (10th Cir. Nov. 7, 2017) (citations omitted).

The Court liberally views Mr. Apodaca's pro se filings. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). However, the Court does not "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* Pro se parties must follow the same rules of procedure that govern other litigants. *Id.*

**Analysis**

I.      **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

        A.      <u>Legal Standard</u>

        The Prison Litigation Reform Act (PLRA) requires exhaustion of administrative

remedies. *Forbes v. Garcia*, 696 F. App'x 381, 382 (10th Cir. 2017) (citation omitted).

> No action shall be brought with respect to prison conditions under
> [42 U.S.C. § 1983], or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to all inmate suits about

prison life, irrespective of the type of wrong the prisoner alleges. *Porter v. Nussle*, 534 U.S. 516,

532 (2001). In order to demonstrate exhaustion of administrative remedies, a prisoner must

comply with all of the prison's procedures. *Forbes*, 696 F. App'x at 382. (citation omitted).

        Defendants have raised exhaustion of administrative remedies as an affirmative defense

to Mr. Apodaca's claims. Defendants thus bear the burden of proving that Mr. Apodaca did not

use the required administrative remedies. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir.

2011). "Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the

plaintiff to show that remedies were unavailable to him as a result of intimidation by prison

officials." *Id.*

        B.      <u>PNM's Grievance Procedures</u>

        Mr. Orion Stradford submitted his affidavit, stating that he attached the pertinent

grievance policies in effect during 2014 and 2015. *See, e.g.,* NMCD Policy CD 150500-150501.

Doc. No. 54–1, Doc. No. 54–2 (Bates 000030–000056). Policy CD 150500 states, in part, that an

inmate exhausts administrative remedies by completing the grievance process through the

"Department-level appeal." Doc. No. 54–1 (Bates 000004, ¶ C of Definitions). The grievance

policy prohibits any sort of retaliation for the legitimate use of the grievance procedure. *Id.* (Bates 000012, ¶ A of Reprisals).

Policy CD 150501 explains that an inmate is expected to first attempt to resolve a grievance informally through discussion with the person responsible for the incident. If the problem is not resolved, the inmate must file an informal complaint using the "Inmate Informal Complaint form" within five days of the incident. *Id.* (Bates 000013, ¶ 1a of Procedures). The informal complaint should be addressed to the Unit Manager or to other individuals as specified in the policy. *Id.* The Unit Manager or other designated employee must address the issue and return the informal complaint form to the inmate within five working days of receipt of the complaint. *Id.* (¶ 1b of Procedures). The Unit Manager or other designated employee logs and tracks all informal complaints. All non-resolved complaints are returned to the inmate to be attached to a formal grievance.

A written formal grievance must be filed using the "Inmate Grievance form." *Id.* (Bates 000014, ¶ 3 of Procedures).The main responsibility of the Grievance Officer is to resolve formal grievances. *Id.* (¶ 3 of Procedures). The Grievance Officer must notify the grievant of receipt of a formal grievance "on an Inmate 5-Day Notice of Receipt of Formal Grievance From." *Id.* (¶ 4 of Procedures). If a grievance relates directly to the actions of a Grievance Officer, the inmate is to send the completed grievance form to the Warden who will appoint a person to address the grievance. *Id.* (Bates 000015, ¶ 9 of Procedures).

The Grievance Officer notes the date of receipt of a grievance, assigns a "CMIS" number to the grievance, including the institution, year, and number of the grievance. *Id.* (Bates 000016, ¶ 1 of Grievance Officer's Review). The Grievance Officer determines if a grievance is untimely, incomplete, or otherwise improperly submitted, in which event, the grievance is returned to the

inmate with an explanation of why it is returned. *Id.* (¶ 2 of Grievance Officer's Review). The Grievance Officer investigates a grievance, interviews the inmate, and completes the grievance form. The Grievance Officer must complete the investigation and deliver the document to the Warden for review within 15 working days of receipt of the grievance. *Id.* (Bates 000017, ¶ 4 of Grievance Officer's Review). The Warden or designee has 15 working days to make a decision as to the Grievance Officer's recommendation. *Id.* (¶ 4 of Warden's Decision). The inmate must be informed in writing of the Warden's decision within five working days. *Id.* (¶ 6 of Warden's Decision).

Policy CD 150501 also sets out detailed requirements for appealing a Warden's decision on a grievance. *Id.* (Bates 000018, Appeal Process). As already indicated, an inmate must complete the appellate process in order to have fully exhausted the inmate's administrative remedies. In addition, the pertinent grievance policies require thorough record keeping of grievances. *See, e.g.,* CD-150501 (Bates 000013 ¶ 2); CD-150501 (Bates 000019, ¶F of Record Keeping and Periodic Evaluation).

With respect to complaints about classification and disciplinary decisions, an inmate must use a separate appeal process. *See* CD-150500, ¶¶ c and d (listing matters that are not grievable and that are subject to a separate appeal process); CD-090100(BB) (required steps to challenge disciplinary decisions of hearing officers); CD-143001(G) (appeal process for classification decisions); CD-080102(P)(1) (process for institutional classification appeals).

C.    Evidence of Mr. Apodaca's Grievances

Ms. Michelle Boyer served as PNM's Grievance Officer in 2014, and was responsible for processing inmate grievances according to New Mexico Correctional Department's policy. Boyer Aff. ¶¶ 4, 11 (Doc. No. 54–3). Ms. Boyer attached to her affidavit copies of grievance logs from

the pertinent time frame and copies of grievances that Mr. Apodaca submitted from 2014 to January 2016.[10] *Id.* ¶ 5.

Mr. Larry Phillips is the Grievance Appeals Coordinator and is the custodian of all inmate grievance appeals, which are logged when received and responded to promptly. Phillips Aff. ¶¶ 4, 5 (Doc. No. 54–11). Mr. Phillips attached to his affidavit copies of Mr. Apodaca's grievance appeals in 2014 and 2015. *Id.* ¶ 7.

In addition to the above-identified grievances and grievance appeals, the Court has examined all of the exhibits produced by Mr. Apodaca in relation to his allegations. Mr. Apodaca attached to his Response (Doc. No. 69–1) a page identified as "Exhibits," followed by eight additional handwritten pages. In these pages, Mr. Apodaca lists brief descriptions of letters, personal notes, and journal notes, which he may be trying to say are evidence of his complaints to prison officials. The first two pages of notes are unclear and lack any date. One of the descriptions refers to some type of document that consists of 154 pages. Doc. No. 69–1 at 1 (#7). Six of the attached pages (Doc. No. 69–1, at 3–8) purport to list "sick calls and meetings from my personal journals" filed in Mr. Apodaca's state court proceeding. Next to the dates, Mr. Apodaca identifies exhibits possibly in the state court proceeding as "civil 1983," "state tort," "original notes and journals," and "sick calls." *Id.* On the last two pages of these exhibits (Doc. No. 96–1, at 7–8), Mr. Apodaca again lists dates and notes as to sick calls, medications taken, "nurse problems," receipt of letters, grievances sent (without descriptions), medical requests, etc. Mr. Apodaca gives no description of these events, other than two or three words.

---

[10] Copies of Mr. Apodaca's grievances (informal, formal, and appeals) are found attached to Doc. No. 54–3 to 54–6 (Bates 000061–000124). Copies of grievance logs are found attached to Doc. No. 54–6 to 54–11 (Bates 000125–000187). Copies of grievance appeals and related documents are found attached to Doc. No. 54–12 (Bates 000190–209).

The Court did not locate any copies of grievance forms or appeal forms attached to Mr. Apodaca's many filings. Although Mr. Apodaca attached as exhibits documents related to his placement and housing, as well as disciplinary recommendations, findings, and decisions, and misconduct reports,[11] these attachments do not amount to evidence that Mr. Apodaca exhausted his administrative remedies with respect to the pertinent claims. In fact, at one point in the Complaint, Mr. Apodaca stated that he was unable to exhaust his administrative remedies in relation to at least some of his complaints. Complaint at p. 12 (last paragraph). But, in another part of the Complaint, Mr. Apodaca stated that he had exhausted his administrative remedies. *Id.* at p. 4.

## II.    DISCUSSION OF CLAIMS AND GRIEVANCES

Most of the grievances filed by Mr. Apodaca consist of allegations of substandard medical care,[12] lost personal mail and/or grievances,[13] laundry issues,[14] lack of writing supplies,[15] and inadequate legal access.[16] The Court has not described all of the grievances attached as defense exhibits because the topics of some complaints are unclear and/or because some grievances include a variety of complaints. The Court discusses the following grievances that are relevant to the claims.

---

[11] *See* Doc. No. 94, at pp. 3–8; Doc. Nos. 90–1 at pp. 1–22, 90–2 at pp. 1–17.
[12] *See* Doc. No. 54–4 (Bates 000066–000068, 000076, 000081–000084); Doc. No. 54–5 (Bates 000085–000086, 000093–95); Doc. No. 54–6 (Bates 000112–114).
[13] *See* Doc. No. 54–3 (Bates 000061); Doc. No. 54–4 (Bates 000069, 000079); Doc. No. 54–5 (Bates 000090–000091).
[14] *See* Doc. No. 54–5 (Bates 000097–000101, 000111).
[15] *See* Doc. No. 54–5 (Bates 000102–000108).
[16] *See* Doc. No. 54–6 (Bates 000119–120).

A.  ***Retaliation Claim and Alleged Violations of Grievance Procedures against Ms. Boyer[17]***

      1.    Relevant Grievances

Mr. Apodaca signed an "Inmate Grievance," on June 23, 2014, primarily complaining about the loss of his personal property. Doc. No. 54–4 (Bates 000074). However, Mr. Apodaca also asserted that he believed his property was removed as reprisal for filing a grievance. Without giving any detail about the alleged reprisal, Mr. Apodaca merely recited portions of the grievance procedures that prohibit reprisal for filing grievances. *Id.* (Bates 000074–75). Ms. Boyer returned the June 23, 2014 grievance to Mr. Apodaca explaining that he had not filed the required informal complaint.

In an "Inmate Grievance," submitted on July 1, 2014, Mr. Apodaca stated that "his grievance officer is covering up my proper use of procedural due process rights and dealing with retaliation and deliberate indifference serious medical need and causation and my Eighth Amendment rights for cruel and unusual punishment …." Doc. No. 54–4 (Bates 000076–77). Mr. Apodaca asserted that Ms. Boyer, Mr. Vigil, and others had destroyed his "privileged mail or legal mail." *Id.* (Bates 000077). His requested relief is difficult to read but mentions his "serious medical needs my relief from cruel and unusual punishment and the prison official be held liable for violating my fundamental constitutional rights under the First, Fifth & Eighth and Fourteenth Amendments." *Id.* (Bates 000076). Grievance officer Ken Ukadike returned the grievance with the response that there was: "no stated claim of any clear action of any party that is grievable. You need to state clearly, the actions of the individuals you are grieving." *Id.*

---

[17] The Court previously noted that this claim involving alleged violations of the grievance procedure could proceed based on allegations of retaliation. But, for purposes of clarity, in the event that Mr. Apodaca contends that a failure to respond to his informal complaints or to his grievances implicates his right of access to the courts or his Fourteenth Amendment due process rights, those arguments were rejected in *Kanatzar v. Cole, et al.,* No. 17-3115-SAC, 2017 WL 5970836, at *3 (D. Kan. Dec. 1, 2017) (citations omitted), a decision the Court finds persuasive.

In an "Inmate Informal Complaint," signed July 4, 2014, Mr. Apodaca complained that an unidentified grievance officer was not checking the grievance box daily, although the complaint appears to focus on allegations of inadequate medical care. Doc. No. 54–4 (Bates 000080). Mr. Apodaca stated he had to rewrite a grievance "on medical supervisor Tisha Romero it was given to officer Vigil on 5/29/14 it never made it back to Michelle Boyer…." *Id.* (Bates 000079). Mr. Vigil returned the informal complaint to Mr. Apodaca, explaining that loss or delay of mail was not a grievable offense.

On July 16, 2014, Mr. Apodaca signed another "Inmate Grievance," stating that an unidentified grievance officer had not followed proper procedure "according to CD-150500 my informal complaints and grievance that I had written in proper time and sent in good faith through the security officer that it should have been put into the mail box but it never did if the grievance officer would do her weekly rounds to pick up grievances this would not be an issue." Doc. No. 54–4 (Bates 000078). Mr. Apodaca requested "to have this changed either let us put our own mail in the mailbox or the grievance officer come and make rounds. I've lost $50.00 of personal property because of this playing the blame game which comes down to policy no one does there job according to policy some[one] needs to be held responsible." *Id.* Ms. Boyer returned the grievance to Mr. Apodaca stating that she was unclear about the relief Mr. Apodaca sought. Ms. Boyer noted that the grievance did not identify the offending officer or the officer who supposedly was not doing rounds. Ms. Boyer asked Mr. Apodaca to be more detailed and to re-submit the grievance. *Id.*

On December 1, 2014, Mr. Apodaca submitted an "Inmate Grievance" against Mr. Vigil but the topic of the complaint is unclear. The relief requested was for "the problem to be stopped and the people to be replaced and removed from there positions …." Doc. No. 54–5 (Bates

000087). Ms. Boyer returned the grievance to Mr. Apodaca explaining that it failed to state a claim.

On January 28, 2015, Mr. Apodaca signed an Inmate Grievance complaining that "you cannot get to the grievance state in the New Mexico Corrections Department by the mail system and or the unit manager getting the informals as this informal shows I keep a daily journal of when I send my informal and two how I sent my informal's so as I've said my due process right to file an informal and move on to the grievance stage …." Doc. No. 54–5 (Bates 000091). Mr. Apodaca requested that the informal complaints be given back to the control of the grievance officer or that the mail room be grieved for the incompetence of handling legal and regular mail. *Id.* Ms. Boyer accepted the grievance for consideration but it is unclear if the grievance was decided.

### 2. Discussion of Exhaustion of Administrative Remedies

Based on a review of the above-described grievances and complaints, the Court finds that Mr. Apodaca generally did not exhaust his administrative remedies as to the grievance procedure and retaliation claim, with one exception. It appears that Defendants did not ever respond to his January 28, 2015 grievance even though Ms. Boyer accepted the grievance for consideration. The grievance procedures state that if a "grievance is not disposed of within the specified time limits, the inmate shall be deemed to have exhausted administrative remedies for that specific complaint[,] although this does not mean the grievance is granted. CD-150500(H) (Time Constraints) (Bates 000010).

Notwithstanding this provision in its grievance procedures, Defendants argue that Mr. Apodaca cannot take the position that Defendants' failure to respond to a grievance rendered Mr. Apodaca's administrative remedies unavailable. Defendants acknowledge case law where the

Tenth Circuit Court of Appeals has held that "when prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA." *Martinez* report at 15 (citing *Whitington v. Ortiz*, 472 F.3d 804, 807–08 (10th Cir 2007)). However, Defendants distinguish *Whitington* because it involved the failure to respond to a grievance that occurred at the final stage of the grievance process as opposed to the situation in this case where prison officials failed to respond to Mr. Apodaca's initial grievance. *Id.* at 16.

Defendants argue that Mr. Apodaca could have continued to pursue his grievance through the appeal process and that nothing stopped him from doing so even though he did not receive a response to the grievance. *Id. See, e.g., Aicher v. Alvarado*, No. CIV 13-1135 WJ/KBM, 2015 WL 13662369, at *4 (D.N.M. June 16, 2015) ("When a prison's policies grant leave to appeal even when the inmate has not received a response to his grievance, the prison's failure to respond does not excuse a failure to exhaust.") (citing *Smith v. Beck*, 165 F. App'x 681, 685 (10th Cir. 2006)). Defendants state that "the grievance procedure in place at NMCD allows an inmate to pursue the grievance and appeal *at any stage*." *Martinez* report at 16. (emphasis in original). However, Defendants provide no citation to the grievance procedures in support of this statement and the Court has not located that particular provision if it exists. Thus, because the Court liberally construes Mr. Apodaca's filings, the Court concludes that his January 28, 2015 grievance that was accepted but not answered is evidence that he exhausted his administrative remedies as to complaints about violations of grievance procedures and possible retaliation.

### 3. Discussion of the Merits of Retaliation Claim

As noted previously, a violation of grievance procedures, without more, is not a constitutional violation for purposes of a § 1983 Complaint. However, prison officials may not retaliate against or harass an inmate because of an inmate's exercise of his rights to file internal prison grievances or lawsuits. *Fogle v. Pierson,* 435 F.3d 1252, 1263–64 (10th Cir.), *cert. denied,* 549 U.S. 1059 (2006). In order to state a claim of retaliation, Mr. Apodaca must allege specific facts showing not only who retaliated and how, but also that "but for the retaliatory motive, the incidents to which he refers, including disciplinary action would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). An inmate claiming retaliation must provide *specific facts* to support the claim. *Id.*

Here, Mr. Apodaca sets forth only generalized and vague allegations of retaliation to the extent he mentions retaliation at all. For example, he contends that Ms. Boyer and/or other unnamed prison officials failed to collect mail or grievances on a daily basis, lost or destroyed informal complaints or grievances on unspecified dates, improperly rejected unidentified grievances, and engaged in some kind of unknown "misconduct of grievance procedure." Mr. Apodaca's allegations are conclusory and without evidentiary support. He fails to supply any specific facts showing who retaliated against him for filing grievances, what the acts of retaliation were, or when the alleged retaliation occurred. Mr. Apodaca has adduced no evidence that his use of the grievance system was the "but for" reason Ms. Boyer or unnamed prison officials rejected his grievances, failed to pick up grievances on a daily basis, or lost and destroyed grievances. He fails to identify evidence that Defendants' alleged retaliatory motives were the "but for" causes of their actions or inaction. Stated differently, Mr. Apodaca has not

produced any evidence of a chronology of events from which retaliation could be plausibly inferred.

Because Mr. Apodaca has either failed to state a claim of retaliation for exercising his right to utilize grievance procedures and/or has failed to raise a genuine dispute of material fact as to the essential elements of the claim, the Court will dismiss, with prejudice, the claim against Ms. Boyer of retaliation and alleged violations of grievance procedures.

**B.  *Loss of Property Claims against Mr. Vigil and Mr. Franco***

1.  <u>Relevant Grievances</u>

With respect to Mr. Apodaca's Fourteenth Amendment claims that he was deprived of personal property without due process, there is an "Inmate Grievance," signed on June 23, 2014, in which Mr. Apodaca complains that on May 22, 2014, Mr. Vigil "and warden and other staff and CO's" entered his housing pod and cell and removed Mr. Apodaca's property, including his TV, MP3, CL-20 headphones, Casio calculator, and a jar of coffee.[18] Doc. No. 54–4 (Bates 000071). Mr. Apodaca sought the return of his property or reimbursement for its loss. Ms. Boyer responded that the grievance was being returned to Mr. Apodaca because it was not timely. *Id.*

Mr. Apodaca also submitted an "Inmate Grievance," dated June 23, 2014, about the loss of his PIN number "for the Serus phone system." He believed this property was taken as part of "reprisal for the filing of a grievance." Doc. No. 54–4 (Bates 000074). Ms. Boyer returned this grievance to Mr. Apodaca informing him that he had to file an informal complaint before filing a grievance. *Id.*

---

[18] Mr. Apodaca stated that several weeks after the removal of these items, some of his property was returned. However, he contended that his MP3 player adapter, his Casio calculator, and the coffee were not returned. Doc. No. 54–4 (Bates 000072).

### 2. Discussion of Exhaustion of Administrative Remedies

Based on a review of the pertinent policies, the Court agrees that Mr. Apodaca's June 23, 2014 grievance about loss of personal property was untimely. Policy CD-150500, ¶ A1 requires the inmate to file an informal complaint within five working days from the date of the incident that gave rise to the complaint. Doc. No. 54–1 (Bates 000013). Mr. Apodaca stated that his property was improperly removed on May 22, 2014. Doc. No. 54–4 (Bates 000071). However, he did not submit the grievance until June 23, 2014, the date Mr. Apodaca signed the grievance form. Proper exhaustion of a claim is not satisfied when a grievance is dismissed because an inmate has missed a deadline that is set out in the applicable grievance procedure. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

As for the other June 23, 2014 grievance, there is no record that Mr. Apodaca submitted an informal complaint or that he appealed the grievance. Therefore, the Court will dismiss the property claims against Mr. Vigil and Mr. Franco for failure to timely exhaust administrative remedies.

### 3. Discussion of the Merits of Property Claims

Even after reviewing the property claims on the merits, the Court concludes that the claims must be dismissed. *See Woodford*, 548 U.S. at 101 (noting that a court may proceed to consideration of the merits of an unexhausted claim because PLRA exhaustion is not jurisdictional). Mr. Apodaca has produced no evidence to support a claim that either Mr. Vigil or Mr. Franco removed his property without due process. Mr. Apodaca has failed to allege that Mr. Franco, for example, personally participated in the removal of Mr. Apodaca's property. Mr. Franco produced an affidavit stating that he was not personally involved with processing grievances or conducting disciplinary matters of inmates. Franco Aff. ¶ 10 (Doc. No. 54–32).

Mr. Franco had not seen Mr. Apodaca's property and was not aware of any problem concerning it. *Id.* ¶ 11.

Mr. Vigil submitted an affidavit stating that he recalled a shakedown of Mr. Apodaca's cell on May 22, 2014 but that Mr. Vigil only remembered one item being taken from Mr. Apodaca–an eyeglass case where "Mr. Apodaca was hoarding medication …." Vigil Aff. ¶ 11 (Doc. No. 54–32). Mr. Vigil explained that the medications were taken from Mr. Apodaca but that the eyeglass case was returned to him. *Id.* Mr. Vigil had no knowledge of any incident concerning Mr. Apodaca's RCA TV, hot pot, MP3 player and case, Casio calculator, CL-20 headphones, MP3 wall adaptor, Torah, or jar of coffee. *Id.* ¶ 12. Mr. Vigil also stated that he was unaware whether Mr. Apodaca's telephone PIN number was turned off. *Id.* ¶ 19.

Mr. Apodaca cites to no evidence that disputes the affidavit testimony of Mr. Franco and of Mr. Vigil. In his Response, Mr. Apodaca acknowledges that Mr. Vigil stated he had not removed any of Mr. Apodaca's personal property. Response at 10 (Doc. No. 69). But, rather than identifying evidence to the contrary, Mr. Apodaca presents a long-winded, nonsensical statement:

> But in my notes and journals and informals and grievance I tried to stop him from putting my life and well being into danger which as I predicted over a month before I was in a group assault as I am not a gang member I have very little choice in any matter as I did ask and was granted protection until I filed my New Mexico tort claim it shows in my journals the day the retaliation started by the STATE prior it was the nursing staff and P.A. that were retaliating because I had grievance Tisha Romero that began in December of 2013 over another fight where the inmate informed the Guard's that I was going to assault him over a roll of toilet paper again I was in a pod of known gangsters … that's how I came to be under the care and supposed protection of Unit Manager Vincent Vigil and Warden of PNM German Franco ….

*Id.*

Mr. Apodaca's vague, cursory, and conclusory allegations that Mr. Franco or Mr. Vigil improperly removed Mr. Apodaca's personal property do not suffice at this Motion for Summary Judgment stage of the pleadings where it is incumbent on him to cite to "particular parts of materials in the record" to show that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A). Because Defendants are entitled to summary judgment on the loss of property claims, the Court will dismiss the property claims with prejudice.

### C. Failure to Protect Claims Against Mr. Franco, Ms. Boyer, and Mr. Vigil

As best as the Court can decipher the claims that Defendants failed to protect Mr. Apodaca's well-being, the allegations appear to concern Mr. Apodaca's placement or housing in various units and his placement in disciplinary segregation. The Court construes Mr. Apodaca's failure to protect allegations as claims that Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff in violation of the Eighth Amendment, although Mr. Apodaca's allegations are far from clear. *See, e.g.,* Complaint at 5 ("… prison officials also violated my Eighth Amendment when they act with deliberate indifference to my prison condition that exposed me unreasonable risk of serious harm and my basic human need for decent conditions it is under a totality of conditions …."); Response at 2, 4 (reciting general Eighth Amendment principles without discussing any pertinent facts); Response at 9 ("letter dated 3-31-15 of exhibits states that fact once again I was in fear of my life if they put me into population but the pod that I was at PNM South in line 13 of affidavit it states that I was placed in a pod for inmates who are difficult to place 'I believe that that is the definition of protective custody' and there is one person who knows that truth because her and STIU were not going to allow me into said pod that person is Megan Harrison which was the initiating employee putting me in said pod and removing me from said pod and placing me level VI special management program and here at LCCF I am in a special program pod with rapist…."). These last quoted

allegations appear to concern a different correctional facility. Moreover, none of the allegations assert that these Defendants engaged in wrongdoing.

        1.    <u>Relevant Grievances</u>

Notwithstanding the lack of clarity regarding the failure to protect claims, the Court examines several of Mr. Apodaca's grievances that may be pertinent to his allegations.

On January 3, 2014, Mr. Apodaca filed an "Inmate Informal Complaint," stating that he had been in a fight on December 26, 2013 and believed that his placement in a cell was cruel and unusual punishment. Doc. No. 54–6 (Bates 000116–000117). The Court did not find a response to the informal complaint.[19]

In another "Inmate Informal Complaint," Mr. Apodaca complained that his case manager had not done anything. The complaint appeared to concern Mr. Apodaca's release from segregation and identified the case manager as "Perzea." Doc. No. 54–6 (Bates 000118).

On January 24, 2014, Mr. Apodaca signed an "Inmate Grievance," complaining that he had been in segregation for 31 days and had not been able to communicate with an unidentified unit manager. Doc. No. 54–3 (Bates 000062). Mr. Apodaca stated that he was trying to get out of segregation without more charges or segregation time. *Id.* On January 25, 2014, Ms. Boyer responded that she was returning this grievance because it concerned the same issue Mr. Apodaca had raised in another grievance she had received from him the same day. *Id.*

The other grievance to which Ms. Boyer apparently referred was also signed by Mr. Apodaca on January 24, 2014. Doc. No. 54–3 (Bates 000064). In this grievance, Mr. Apodaca stated that he had turned in an informal complaint on January 4, 2014 to which he had not

---

[19] While the Court found that the lack of the prison's response to Mr. Apodaca's grievance about alleged violations of the grievance procedures constituted exhaustion of administrative remedies, *see supra*, the Court distinguishes this Informal Complaint from a Grievance. Moreover, this Informal Complaint is so cursory and vague that it provides no information to Defendants regarding the topic of Mr. Apodaca's complaint.

received a response. Mr. Apodaca stated, in part, that he was not able to see the unit manager. *Id.* On the second page of this grievance, Mr. Apodaca wrote at length about his placement in segregation for 31 days and his frustration at not having been able to speak to the unit manager. *Id.* (Bates 000065). Mr. Apodaca explained that he had been found guilty of horseplay and fighting and was sanctioned to 15 days in segregation. He believed he had done twice his time. He also complained that he had gone without hygiene, shower shoes, boxer shorts, and socks, which he contended was cruel and unusual punishment. *Id.*

On January 25, 2014, Ms. Boyer returned this grievance to Mr. Apodaca, explaining that disciplinary placement was not grievable. Ms. Boyer's other note is unclear but appears to say that Mr. Apodaca's disciplinary segregation time started the day Mr. Apodaca claimed to have filed his informal complaint. *Id.* (Bates 000064). It is true that the pertinent policy states that any matter involving disciplinary procedure and findings cannot be grieved and that a separate appeals process must be used to challenge disciplinary actions. CD-150500, ¶ 2c (Bates 000009).

Defendants also argue that Mr. Apodaca's January 24, 2014 grievance is unclear as to what he contended was improper: "the classification that made him eligible for Level V [placement], or the disciplinary decision that resulted in segregation." *Martinez* report at 14. As noted by Defendants, a complaint about discipline was not a grievable placement issue, and the other complaint regarding Mr. Apodaca's classification was denied as a repeat of the previous grievance. Moreover, as noted, there are separate appeal processes for classification and disciplinary decisions and those matters could not be addressed through the inmate grievance procedures. *Id.* (citing Defendants' Ex. A, p. 9; Ex. D, p. 219; Ex. E, p. 360, Ex. F, p. 483). Mr. Apodaca did not assert in any filing that he had used the applicable appeal processes for

complaints concerning disciplinary decisions or classification placements. There is no evidence that he appealed disciplinary or classification decisions.

On December 1, 2014, Mr. Apodaca signed an "Inmate Grievance," in which he noted something about "access to protective custody." Doc. No. 54–5 (Bates 000087–88). The date of the incident was November 24, 2014. Defendants interpreted this very confusing grievance to concern an allegation of "failure to protect Mr. Apodaca's well-being (segregated placement)." *Martinez* report at 14. In the December 1, 2014 grievance, Mr. Apodaca alleged cruel and unusual punishment, cited various legal decisions, complained of a "campaign of harassment," and appeared to state he had not been allowed to practice his religion. Doc. No. 54–5 (Bates 000088). Not surprisingly, Ms. Boyer returned the grievance, stating that Mr. Apodaca had failed to state a claim. *Id.* (Bates 000087).

### 2. Discussion of Exhaustion of Administrative Remedies

Based on the Court's review of all of the evidence concerning Mr. Apodaca's failure to protect allegations (as related to his discipline and placement), the Court concludes that he has failed to exhaust his administrative remedies. The evidence produced by Defendants shows that Mr. Apodaca failed to satisfy all of the required steps to properly grieve and appeal his complaints concerning placement, classification, or disciplinary decisions. Therefore, the Court will dismiss the failure to protect claims against Mr. Franco, Ms. Boyer, and Mr. Vigil for failure to exhaust administrative remedies.

### 3. Discussion of Merits of Failure to Protect Claims

Even if the Court were to examine the failure to protect claims on their merits, the Court would dismiss these claims because Mr. Apodaca failed to raise a genuine dispute of material fact. It is unclear whether Mr. Apodaca's Response contains argument regarding these claims.

He discusses having enemies on his list and that he tried, on an unspecified date, to get the state court judge to place him "back into population." Response at 9. Under a section entitled "retaliation allegations," Mr. Apodaca refers to Mr. Vigil's affidavit where Mr. Vigil supposedly said he did not personally know Mr. Apodaca had enemies. Response at 10. Mr. Vigil stated that he had no knowledge of Mr. Apodaca ever requesting protective custody and that Mr. Apodaca was in a pod for inmates who were difficult to place, "both because of allegations of fears from unnamed inmates, and also because of Mr. Apodaca's behavioral history." Vigil Aff. ¶ 13. Mr. Vigil also stated that had no knowledge of Mr. Apodaca ever claiming enemies from whom he needed protection.[20] *Id.* ¶ 14.

In Mr. Apodaca's Declaration, he writes at length about the enemies he had in prison. Doc. No. 94. But, it appears that the alleged problems with enemies occurred after Mr. Apodaca filed his § 1983 Complaint in January 2015. Mr. Apodaca's Declaration was filed in April 2017 and discusses his incarceration at Lea County Correctional Facility that began in August 2015. *Id.* at 1. Mr. Apodaca's problems with enemies at Lea County Correctional Facility are not relevant to his claims against these Defendants.

Mr. Apodaca also provided copies of disciplinary findings and recommendations pertaining to evidence of his misconduct in late 2014. Doc. No. 94 at 5. There is an additional misconduct report for Mr. Apodaca, dated December 2013. Doc. No. 94 at 7. *See also* Doc. Nos. 90–1 and 90–2 (disciplinary reports, memos, and decisions; and placements in 2013 and 2014). However, none of these documents show that these Defendants were involved in the disciplinary write-ups or decisions.

---

[20] Mr. Apodaca attached a prison form stating that he had two enemies but this form was dated August 17, 2015, eight months after Mr. Apodaca filed his § 1983 Complaint. Moreover the form was signed by Mr. Eric M. Luchetti, and there is no evidence that Mr. Vigil had this information.

Neither Mr. Apodaca's Declaration nor his exhibits contain evidence to support claims against Mr. Franco, Ms. Boyer, or Mr. Vigil of failure to protect Mr. Apodaca's well-being or of deliberate indifference to a risk of serious harm to Mr. Apodaca. Because Mr. Apodaca has failed to identify evidence that raises a genuine dispute of material fact, Defendants are entitled to summary judgment on the failure to protect claims. Therefore, the Court will dismiss, with prejudice, the failure to protect claims against Mr. Franco, Ms. Boyer, and Mr. Vigil.

IT IS THEREFORE ORDERED that:

1)  Defendants' request for summary judgment and/or for dismissal for failure to state a claim set forth in the *MARTINEZ* REPORT OF DEFENDANTS FRANCO, BOYER, AND VIGIL (Doc. No. 54) is GRANTED; and

2)  PLAINTIFF VICTOR APODACA'S 42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT and all claims and counts within the Complaint will be dismissed against Defendants Franco, Boyer, and Vigil in a separate Order.

_____
SENIOR UNITED STATES DISTRICT JUDGE